IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-00523-PAB-BNB

ERVIN LEE JONES,

Applicant,

v.

DONNIE MARTINEZ, and
JOHN W. SUTHERS, the Attorney General of the State of Colorado,

Respondents.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [Doc. # 9, filed 5/21/2007] (the "Application") filed by Ervin Jones (the "petitioner"). I respectfully RECOMMEND that the Application be DENIED.

## I.  THE LAW

This Court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An application cannot be granted unless it appears that the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b)(1).

If a petitioner exhausts his available state remedies, his application may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28

U.S.C. § 2254(d). Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court clarified this standard in <u>Terry Williams v. Taylor</u>, 529 U.S. 362 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u> at 412-13. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409.

Generally, if a petitioner fails to exhaust available state remedies, a federal court should dismiss the application without prejudice so that the state remedies may be pursued. <u>Demarest v. Price</u>, 130 F.3d 922, 939 (10th Cir. 1997). The federal court, however, should first consider whether the petitioner would be able to raise the unexhausted claims in the state court. <u>Id</u>.

If the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991). The federal court may not consider issues raised in a habeas corpus petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the failure to

consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. 722, 750 (1991). The determination of cause, prejudice, and fundamental miscarriage of justice are matters of federal law. Demarest, 130 F.3d at 941.

## II.  BACKGROUND

The petitioner was indicted on various counts for business dealings with an elderly man whom the petitioner solicited to invest in his computer company. *Answer to Federal Habeas Application* [Doc. #20] (the "Answer"), Appendix C, p. 3.[1] After a four-day trial, the jury found the petitioner guilty of one count of securities fraud, two counts of theft from an at-risk adult, and one count of theft. Id. He was sentenced to twelve years of community corrections. Id.

The petitioner appealed his judgment of conviction. Id. at Appendix A. The appellate court affirmed the conviction. Id. at Appendix C. The supreme court denied his petition for a writ of certiorari on November 13, 2006. Id. at Appendix E.

On direct appeal, the petitioner raised four claims: (1) the trial court abused its discretion in failing to sever the count of securities fraud from the remaining counts of theft and in failing to order a separate trial on the charge of securities fraud; (2) the trial court erroneously denied the petitioner's motion for a directed verdict where the prosecutor had failed to overcome the presumption that the business transaction in this matter was a general partnership/joint venture, and not an investment contract/security; (3) the trial court erroneously denied the petitioner's motion for substitution of counsel in violation of his due process right to effective assistance of counsel and (4) the trial court erroneously determined that the petitioner waived his right to a

---

[1] I cite to the page numbers of the parties' briefs and attachments as they are assigned by the court's docketing system.

speedy trial and erroneously set the trial to begin after the expiration of the speedy trial deadline. Id. at Appendix A.

In his Application, the petitioner asserts three claims. Claim one alleges that the trial court's failure to sever his securities fraud charge from his theft charges violated his due process rights. *Application*, p. 10. Claim Two alleges that the "[t]rial court denied the defendant's due process of law by erroneously interpreting subsection 11-51-501(1()b) C.R.S. 2002." Id. at p. 11. Claim Three alleges that the trial court "erroneously denied the defendant appellant's motion for substitution of counsel in violation of his due process right to effective assistance of counsel." Id. at p. 12.

The respondents concede, and I agree, that the Application is timely filed within the one year limitation period established by the Antiterrorism and Effective Death Penalty Act. *Answer*, pp. 5-6.

### III.  ANALYSIS

#### A.  Claim One

Claim One of the Application alleges that the trial court violated the petitioner's due process rights when it failed to sever the securities fraud charge from the theft charges. *Application*, p. 10. The respondents assert that the petitioner exhausted this claim in the state courts. *Answer*, p. 8. I find that Claim One was not fairly presented to the state courts as a due process claim.

In his brief to the state appellate court, the petitioner argued that the trial court abused its discretion under Rule 14 of the Colorado Rules of Criminal Procedure when it failed to sever the securities charge from the theft charges. Id. at Appendix A, pp. 6-11. The petitioner argued that under Rule 14, an abuse of discretion is found when the joinder of counts causes actual prejudice

to the defendant and not a mere difference in trial strategy, and the trier of fact was unable to separate the facts and legal principles applicable to each offense. Id. at p. 6. The petitioner's argument to the state appellate court focused on this standard. The only mention of a constitutional violation is a conclusory statement at the end of the argument that "the district court's failure to sever the charges in Mr. Jones' case was an abuse of discretion in violation of Crim.P. Rule 14 and the constitutional right to a fair trial, amounting to reversible error regarding the three counts of theft." Id. at p. 11. The petitioner did not advise the state appellate court which of his constitutional rights was violated, nor did he analyze his claim under any constitutional standard. In addition, the appellate court did not analyze the claim under any constitutional standard. Id. at Appendix C, pp. 3-7.

In his Application, the petitioner presents the claim as a violation of his "due process right by impermissible lowering of the prosecution's burden of proof beyond a reasonable doubt." *Application*, p. 10. A decision not to sever charges based on the defendant's status as a felon does not necessarily implicate the Due Process Clause. It could implicate the defendant's right to a fair trial under the Sixth Amendment. United States v. Waagner, 104 Fed.Appx. 521, 527 (6th Cir. July 14, 2004). The petitioner's vague and conclusory statement regarding the violation of a constitutional right to a fair trial did not apprise the state court of his due process claim.

Comity is the rationale underlying the exhaustion requirement--state courts must be provided with the first opportunity to pass on alleged defects in their criminal proceedings leading to the conviction at issue. Rose v. Lundy, 455 U.S. 509, 518 (1982). In order to "encourage state prisoners to seek full relief first from the state courts," the exhaustion requirement must be "rigorously enforced." Id. Exhaustion of state remedies requires that a

petitioner raise in the state courts both the factual and legal bases of his habeas claims. Gibson v. Scheidemantel, 805 F.2d 135, 138 (3rd Cir. 1986). Consequently:

> It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based. The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

O'Halloran v. Ryan, 835 F.2d 506, 508 (3rd Cir. 1987) (quotations and citations omitted).

The petitioner's allegations and supporting evidence did not offer the state appellate court a "fair opportunity to apply controlling legal principles to the facts bearing upon his" due process claim. See Thomas v. Gibson, 218 F.3d 1213, 1221, 2000 WL 986587 at *5, n.6 (10th Cir. July 18, 2000). Because the substance of the claim was not fairly presented to the state court, see Picard v. Connor, 404 U.S. 270, 278 (1971), his due process claim has not been exhausted.

When a petitioner fails to exhaust available state remedies, the federal court must determine whether the petitioner would be able to raise the claim in the state court. Demarest, 130 F.3d at 939. If the claim would be procedurally barred in the state court, his claims are procedurally defaulted for purposes of habeas relief. Coleman, 501 U.S. at 735 n.1.

The due process claim is procedurally defaulted. Because the petitioner already presented the claim to the state courts as a Rule 14 issue, he is prohibited from reasserting it as a due process claim. Colo. R. Crim. P. 35(c)(3)(VII) (providing that post conviction relief is not available to a petitioner for a claim that could have been presented on direct appeal);[2] People v.

---

[2] Colorado Rule of Criminal Procedure 35(c)(3)(VII) provides that the court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought except the following: (a) any claim based on events that occurred after initiation of the defendant's prior appeal or postconviction proceeding; (b) any claim based

Versteeg, 165 P.3d 760, 763 (Colo. App. 2006) (stating that Rule 35(c) motions filed after July 1, 2004, are subject to procedural bar in Rule 35(c)(3)(VII)). See also DePineda v. Price, 915 P.2d 1278, 1281 (Colo. 1996) (stating that "a defendant is precluded from raising an issue under Crim.P. 35 if its review 'would be nothing more than a second appeal'").

I may not consider a claim raised in a habeas petition that has been defaulted in state court on an independent and adequate procedural ground unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice. English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993). The petitioner has not argued cause and prejudice or a fundamental miscarriage of justice.

Because the petitioner's due process claim is procedurally defaulted, and because the petitioner did not demonstrate cause and prejudice or a fundamental miscarriage of justice, this claim is not proper for consideration on an application for writ of habeas corpus.

### B. Claim Two

In Claim Two, the petitioner alleges that the "[t]rial court denied the defendant's due process of law by erroneously interpreting subsection 11-51-501(1()b) C.R.S. 2002." *Application* , p. 11. The respondents assert that the petitioner exhausted this claim in the state

---

on evidence that could not have been discovered previously through the exercise of due diligence; (c) any claim based on a new rule of constitutional law that was previously unavailable, if that rule should be applied retroactively to cases on collateral review; (d) any claim that the sentencing court lacked subject matter jurisdiction; (e) any claim where an objective factor, external to the defense and not attributable to the defendant, made raising the claim impracticable.

courts. *Answer*, p. 8. As with Claim One, I find that Claim Two was not fairly presented to the state courts as a due process claim.

In his brief to the state appellate court, the petitioner presented the claim as follows:

> The district court erroneously denied the defendant-appellant's motion for directed verdict, where the prosecution failed to overcome the presumption that the business transaction in this matter was a general partnership/joint venture, and not an investment contract/security.

Id. at Appendix A, p. 11.

The petitioner does not mention, even in passing, the constitution or the Due Process Clause. Id. at pp. 11-18. This claim was presented to the state appellate court solely as a matter of state law. For the same reasons as Claim One, this claim is not exhausted; is procedurally defaulted; and is not proper for consideration on an application for writ of habeas corpus.

### C.  Claim Three

Claim Three alleges that the trial court "erroneously denied the defendant appellant's motion for substitution of counsel in violation of his due process right to effective assistance of counsel." *Application*, p. 12. This claim has been exhausted in the state courts. *Answer*, Appendix A, pp. 18-20; Appendix D, pp. 14-15. Therefore, the Application can be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

As a preliminary matter, I note that the right to counsel is rooted in the Sixth Amendment, not the Due Process Clause. United States v. Burney, 756 F.2d 787, 790 (10th Cir. 1985). However, the state appellate court addressed this claim under Sixth Amendment standards. Therefore, I will consider the claim as if it were presented to the state courts as a Sixth Amendment issue.

"To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987) (internal quotations and citations omitted). See also United States v. Johnson, 961 F.2d 1488, 1490 (10th Cir. 1992) (motion to withdraw on basis that defendant believed his attorney was intimidated by the court and could not continue to act zealously in his defense denied because defendant did not show a conflict of interest, a breakdown in communication, or an irreconcilable conflict). In addition, the court "must balance the need for efficient administration of the criminal justice system against the defendant's right to counsel." Padilla, 819 F.2d at 956.

The petitioner moved the trial court for substitution of counsel three days before the trial. *Answer*, Appendix C, pp. 10, 15. The trial judge and the petitioner engaged in the following colloquy:

> PETITIONER: My first -- first thing I want to say, I never did waive speedy trial. The last time -- I have never verbally -- I have never signed anything and I've objected constantly about having the delays myself. So, during September, I believe, you mentioned that -- I'm trying to think, Ventura said willing to waive speedy trial but you still set the trial within the time that the speedy was up, then we get rushed back up here the next week and then, Mr. Morales says that Helen is now sick, she has to go to the doctor, so

9

> you guys set another date, rush everybody out. Nobody asked anything about waivers, never seen anything, never verbally agreed. That's one of my concerns.
>
> Another concern is that I have never received discovery. I have asked for discovery many of times [sic] and have not received discovery. I mean from the Public Defender. Willing to pay for it, have my family come up here pay for it and I've asked for this. I have been here 14 months now. Why wouldn't I want my discovery? And I think -- I don't know if it's law but I think I have a right to be able to prepare myself and see it. And they have -- they bring up -- they -- about ten days ago, I got about 30 pages of discovery of grand jury of 20 pages here. They're not complete.
>
> COURT: You know, I don't want to hear all of this. I thought you were going to ask -- are you going to get to the bottom line and say you want a new counsel?
>
> PETITIONER: I want new counsel.
>
> COURT: On what grounds? On what grounds?
>
> PETITIONER: That I feel they're not representing my interest here.
>
> COURT: All right.

Id. at Appendix I, pp. 5-6.

The trial court denied the petitioner's request for substitute counsel, and the petitioner appealed the trial court's decision. Id. at Appendix A, pp. 18-20. The state appellate court upheld the trial court's denial of the petitioner's request for substitute counsel. Id. at Appendix C, pp. 12-15. In doing so, the court stated:

> Three days before trial, Jones's attorneys explained to the court that Jones had been sending letters to opposing counsel and the court that had delineated the entire defense strategy. One of Jones's attorneys stated that, although strained, the attorney-client relationship had not completely broken down:

> These are letters expressing concerns over his representation and I have reviewed those and I spoke to [the other public defenders on the case], went through them, and it was my opinion, as of yesterday afternoon, that we indeed did not have a conflict that was so clear as to require us to withdraw from this case. I came down this morning and had an opportunity to speak with Mr. Jones further and I think we have, at this point, after speaking with Mr. Jones, actually reached that point. We were on very shaky grounds in terms of our relationship with Mr. Jones prior to today, but that's still - in and of itself does not create a conflict.

The public defender later asked that Jones be heard on his motion for new counsel:

> I think the court needs to hear from Mr. Jones in terms of his motion to fire us. His grounds are separate from speedy trial issues and I have already told the Court that what he has alleged as far as I know in terms of letters and my conversation with him this morning, does not rise to the level of a conflict.

When Jones addressed the court, he asked for new counsel. He alleged that he could not get discovery from the public defender, that the discovery he had received was incomplete, and that he "did not feel [the public defender was] representing [his] interests."

The court denied Jones's request for new counsel.

\* \* \*

When an indigent criminal defendant voices objections to court-appointed counsel, the trial court must inquire into the reasons for dissatisfaction. If the defendant establishes good cause, such as a conflict of interest or a complete breakdown of communication, the court must appoint substitute counsel. Conversely, if the court has a reasonable basis for concluding that the attorney-client relationship has not deteriorated to the point where counsel is

> unable to give effective assistance, the court is justified in refusing to appoint new counsel.
>
> In determining whether to appoint substitute counsel, the court may consider the timing of the motion, the inconvenience to witnesses, and the possibility that any new counsel will be confronted with similar difficulties.
>
> * * *
>
> Here, Jones's attorneys indicated that the attorney-client relationship had been strained to some degree but that there was no complete breakdown of communication or conflict of interest. Jones's allegations -- which centered on the amount of discovery that he had received -- did not evidence a conflict of interest.
>
> Thus, the trial court correctly ruled that there was not sufficient cause for substitution of counsel.
>
> The court's ruling is particularly sound in light of the fact that the request for the new counsel was made only three days before trial.
>
> We therefore find no abuse of discretion.

Id.

The petitioner argues that "the public defender created a conflict of interest with Mr. Jones because the public defender waived Mr. Jones' right to speedy trial contrary to Mr. Jones' interests, resulting in demonstrable prejudice to Mr. Jones." *Application*, p. 12. The petitioner cites to People v. Campbell, 58 P.3d 1148 (Colo. App. 2002), to support the proposition that "an attorney creates conflict of interest when he takes a legal position adverse to defendant's interests and such legal position results in demonstrable prejudice to defendant." Id.

In Campbell, the defendant requested substitute counsel because: "(1) he had not hired this attorney, but was simply told he was taking over defendant's case after the second attorney abandoned defendant's representation without giving him proper notice; (2) the third attorney was having personal problems including the recent death of a child, and the law firm was

experiencing serious problems; (3) the attorney had been absent from his office for an unknown amount of time and failed to return defendant's phone calls; and (4) the attorney had little criminal law experience and was unprepared for the motions hearing." In addition, the third attorney informed the court that the "defendant had terminated him and that he could no longer effectively represent defendant based on their lack of communication." 58 P.3d at 1152.

Campbell repeatedly told the trial court he wanted and needed a lawyer and did not want to represent himself, and his attorney repeatedly told the court that the defendant had waived his right to counsel. The appellate court found that counsel's contrary representations to the court "created a conflict of interest that adversely affected" the counsel's ability to represent the defendant, and that the trial court should have inquired further into the matter once this conflict of interest became apparent. Id. at 1158-59.

The Campbell case is inapposite. The petitioner does not argue that he protested the extension of his speedy trial date.[3] To the contrary, he alleges that the court "set another date, rush everybody out. Nobody asked anything about waivers, never seen anything, never verbally agreed." Moreover, unlike Campbell, the petitioner's counsel represented to the trial court that there was no complete breakdown of communication or conflict of interest.

Based on the petitioner's reasons for requesting substitute counsel and the Public Defender's representations to the trial court, the state courts' decision to deny substitute counsel was not contrary to, nor an unreasonable application of, clearly established federal law. The

---

[3] I note that in his response to the respondents' Answer, the petitioner argues that the state court erroneously determined that he waived his right to a speedy trial. *Answer to Federal Habeas Application*, [Doc. #25] (the "Reply"), pp. 10-13. However, the Application does not assert a claim based on denial of his speedy trial rights. I decline to address a claim raised for the first time in a responsive brief.

petitioner does not rebut the state courts' factual determinations with clear and convincing evidence. Therefore, I find no basis upon which to grant the petitioner's Application with regard to Claim Three.

## IV. CONCLUSION

I respectfully RECOMMEND that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated April 27, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge